# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### Oakland Venue

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | Docket No.:    0971 4:12CR00083-001 PJH |
| DOMINIC  LEUNG | ) | |
| | ) | |

**Prepared for:**    The Honorable Phyllis J. Hamilton
Chief United States District Judge

**Prepared by:**    Brian D. Casai
U.S. Probation Officer
Oakland, CA
Work: (510) 637-3595
Fax:   (415) 581-7416
brian_casai@canp.uscourts.gov

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| Michael Rabkin | Eugene Illovsky (Retained) |
| 450 Golden Gate Avenue, Suite 10-0101 | 1611 Telegraph Avenue, Suite 806 |
| San Francisco, CA 94102 | Oakland, CA 94612 |
| (415) 934-5372 | (510) 394-5885 |
| michael.rabkin@usdoj.gov | eugene@illovskylaw.com |

**Sentence Date:**    December 15, 2017 9:00 AM

**Offense:**    **Count 1**:
Bid Rigging
15 U.S.C. § 1
Not more than 10 years imprisonment/$1,000,000 fine
(Class C Felony)

**Release Status:**    Released on own recognizance on March 14, 2012

**Detainers:**    None.

**Codefendants:**    None.

**Related Cases:**    None.

Date Report Prepared:  November 13, 2017    Date Report Disclosed: December 1, 2017

Re:  Leung, Dominic (40459)                                                                Page 2

**Identifying Data:**



| | |
|---|---|
| **Date of Birth:** | January 6, 1969 |
| **Age:** | 48 |
| **Race:** | Asian |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Male |

**SSN#:**            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
**FBI#:**            66340PD9
**USM#:**            17022-111
**State ID#:**       H11926866
**ICE#:**            A076678182
**PACTS#:**          40459

**Education:**          Bachelor's Degree
**Dependents:**         2
**Citizenship:**        U.S. Citizen
**Immigration Status:** Naturalized U.S. Citizen
**Country of Birth:**   China
**Place of Birth:**     Hong Kong

**Legal Address:**      1488 Sunnybrook Road
                        Alamo, CA 94507

**Residence Address:**  1488 Sunnybrook Road
                        Alamo, CA 94507

**Alias(es):**          Also Known As: Leung, Dominic Yiu Tung
                        Also Known As: Leung, Dominic T.
                        Also Known As: Leung, Tung Yiu

**Alternate IDs:**      None

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and  federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

Re:  Leung, Dominic (40459)                                                    Page 3

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.    On February 9, 2012, a two-count Information was filed in the Northern District of California, charging Dominic Leung with violations of 15 U.S.C. § 1 – Bid Rigging (Count One) and 18 U.S.C. § 1349 – Conspiracy to Commit Mail Fraud (Count Two).

2.    On October 26, 2016, the defendant pled guilty to Count One of the Information. Judgment and Sentencing are currently scheduled for December 15, 2017, before the Honorable Phyllis J. Hamilton, Chief United States District Judge.

3.    A written Plea Agreement was filed pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure and is enclosed for the Court's review.  The parties stipulated to a base offense level of 12 pursuant to USSG §2R1.1(a), plus 1 level pursuant to USSG §2R1.1(b)(1), plus 2 levels pursuant to USSG §2R1.1(b)(2)(A) (volume of commerce stipulated to be $2.07 million), less 2 levels for acceptance of responsibility, for a total offense level of 13.  The probation officer agrees with this calculation.  The parties agree that an applicable fine would be calculated as one to five percent of the volume of commerce, but not less than $20,000, USSG §2Rl.l(c)(1), for a range of $20,700 to $103,500.  The United States agrees to recommend a fine between $7,500 and $75,000. The government and the defendant agree to recommend that the Court order the defendant to pay restitution in the amount of $45,429.  The government has since provided that the correct amount relevant to restitution is $45,428.50.

4.    On March 14, 2012, the defendant made an Initial Appearance and was released on his own recognizance without U.S. Pretrial Services Supervision.  It appears that he has remained in compliance while on pretrial release.

### The Offense Conduct

5.    The following information was provided by the U.S. Department of Justice, Antitrust Division, which included investigative reports prepared by the Federal Bureau of Investigation (FBI).

6.    Within the course of the offense, which occurred between 2008 and 2011, when California homeowners defaulted on their mortgages, mortgage holders could institute foreclosure proceedings and sell the properties through non-judicial public real estate foreclosure auctions ("public auctions").  These public auctions were governed by California Civil Code, Section 2924, et seq.  Typically, a trustee was appointed to oversee the public auctions.  These public auctions usually took place at or near the courthouse of the county in which the properties were located.  The auctioneer, acting on behalf of the trustee, sold the property to the bidder offering the highest purchase price.  The Trustees were employed by the lending institutions which held mortgages on the properties to conduct the foreclosures and subsequent auctions.  Proceeds from the sale were then used to pay the mortgage holders, other holders of debt secured by the property, and, in some cases, the defaulting homeowner (collectively "beneficiaries").

7.      Beginning as early as May 2009, and continuing until January 2011, Dominic Leung (Leung) and others entered into and engaged in a conspiracy to suppress and restrain competition by rigging bids to obtain hundreds of selected properties offered at public auctions in Contra Costa County in the Northern District of California, in unreasonable restraint of interstate trade and commerce, in violation of Section 1 of the Sherman Act, Title 15, United States Code.  The bid-rigging conspiracy consisted of an overarching agreement among the would-be competitors not to bid on properties sold at the Contra Costa County foreclosure auctions.  Instead, the conspirators took turns purchasing the properties at noncompetitive prices.  By working collectively to rig the auctions, the "round" participants were assured a stream of payoffs from their fellow coconspirators.

8.      After the public auction, the conspirators engaged in a "round," a system of successive bidding to determine who would purchase the property and the amount of payoffs that the other coconspirators would be paid for rigging the auction.  The conspirators would receive the deed to the illegally acquired property and make the payoffs they had previously determined.

9.      Leung initially started buying properties at trustee sales in approximately 1995 while working for Wilson Young as an employee of Young's company, JWI Corporation. Leung worked for Young until 2007, when Leung began selling jewelry on the internet. In 2009, Leung returned to the trustee sales, this time working for himself and using money from a family friend to buy properties.

10.     By July or August 2009, Leung decided that he needed help with his business and invited Hilton Wong to be his partner.  At the start of Wong's employment, Leung explained everything about the trustee sales to Wong.  Wong attended both the auctions and the secondary auctions/rounds as a representative of Leung.  Leung and Wong often attended the auctions and rounds together but, at times, Leung attended them without Wong, or Wong attended them without Leung and communicated with Leung by telephone.

11.     Leung participated in rounds (either himself or through Wong, acting as his representative, or both) on approximately 100 properties, of which he purchased approximately 25 rigged properties.  The parties have agreed that the affected Volume of Commerce is $2.07 million.  The Plea Agreement obligates Leung to pay $45,429 in restitution, which corresponds to a portion of the payoffs that he received through the conspiracy.

12.     Leung was initially interviewed by the FBI on January 11, 2011.  During that interview, he stated that he had never participated in any rounds, pay-off schemes, or non-competition agreements, and had no knowledge of such activities relating to foreclosure auctions.  Later in the same interview, however, Leung did admit that he bought two properties for $2,000 each, from Javier Sanchez, immediately after Sanchez was awarded the properties as the winning bidder.  In March 2012, Leung agreed to plead guilty and cooperate with the government.  Leung met with the FBI again in April 2012 and admitted to his participation in rounds and payoffs. Leung also met with the FBI for a third interview later in April 2012.

### Victim Impact

13.     While the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release).  18 U.S.C. § 3583(d) provides, in part, that the "court may order, as a further condition of supervised release, . . . any condition set forth as a discretionary condition of probation in section 3563(b)(1) through (b)(12)." 18 U.S.C. § 3563(b), in turn, provides that the Court may order the defendant to make restitution. Restitution of $45,428.50 is due based on the defendant's involvement in the offense.

### Adjustment for Obstruction of Justice

14.     The probation officer has no information indicating the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

15.     The defendant entered a guilty plea and was cooperative with the probation officer. During the presentence investigation, the defendant provided the following written statement: "Words cannot adequately express how remorseful I am about my bid rigging violation.  I was stupid to compromise my integrity by violating the law.  I have resolved to do all that I can to make things right and atone for my error."

### Offense Level Computation

16.     In accordance with the Supreme Court Decision in **United States v. Booker**, the following guideline calculations are no longer binding but advisory. Therefore, they must be considered by the sentencing court together with other sentencing goals. The current United States Sentencing Commission, 2016 Guidelines Manual, is being used as there are no ex post facto issues. USSG §1B1.11(a).

### Count 1: Bid Rigging

17.     **Base Offense Level:** The guideline for a violation of 15 U.S.C. § 1 is found at USSG §2R1.1(a), which calls for a base offense level of 12.                          **12**

18.     **Specific Offense Characteristics:** Pursuant to USSG §2R1.1(b)(1), as the offense involved an agreement to submit non-competitive bids, a 1-level increase is applicable.                                                                                              **+1**

19.     **Specific Offense Characteristics:** Pursuant to USSG §2R1.1(b)(2)(A), as the offense involved more than $1,000,000 but less than $10,000,000 in commerce, a 2-level increase is applicable.                                                                      **+2**

20.     **Victim Related Adjustment:** None.                                                                **0**

21.     **Adjustment for Role in the Offense:** None.                                              **0**

Re:  Leung, Dominic (40459)                                                   Page 6

22.     **Adjustment for Obstruction of Justice:** None.                        **0**

23.     **Adjusted Offense Level (Subtotal):**                                  **15**

24.     **Chapter Four Enhancement:** None.                                     **0**

25.     **Acceptance of Responsibility:** The defendant has clearly demonstrated
        acceptance of responsibility for the offense. The defendant pled guilty and
        submitted his acceptance of responsibility based on the facts of the written Plea
        Agreement. Accordingly, the offense level is decreased by two levels. USSG
        §3E1.1(a).                                                              **-2**

26.     **Total Offense Level:**                                                **13**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

27.     Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the
        following criminal history category calculation to be advisory.

        **Juvenile Adjudication(s)**

28.     None.

        **Adult Criminal Conviction(s)**

29.     None.

        **Criminal History Computation**

30.     The criminal convictions above result in a subtotal criminal history score of zero.

31.     The total criminal history score is zero. According to the sentencing table in USSG
        Chapter 5, Part A, a criminal history score of zero establishes a criminal history category
        of I.

        **Other Criminal Conduct**

32.     None.

        **Pending Charges**

33.     None.

        **Other Arrests**

34.     None.

## PART C. OFFENDER CHARACTERISTICS

35.   The following information was provided by the defendant during the presentence investigation interview. Personal information provided by the defendant was corroborated by his wife, Innian Hung.

### Personal and Family Data

36.   Dominic Leung was born on January 6, 1969, in Hong Kong, China, to Kam Hung Leung (age 79) and Hon Cheng (age 72).  Mr. Lueng's parents currently reside together in Alamo, California.  The defendant has two brothers: Tony Fai Leung (age 47), a project manager at KZ Tile currently residing in Walnut Creek, California; and Hiu Ming "Eddie" Leung (age 41), a facilities manager for Gucci residing in Hong Kong.

37.   The defendant grew up in Hong Kong with his parents and brothers.  His parents were both employed in customer service with a local bank.  Mr. Leung recalled no significant problems in his family during his upbringing.  He enjoyed positive relationships with both his parents and his brothers.  The defendant's parents provided for him and supported him in his school and social endeavors.  Mr. Leung played soccer and was involved in church youth groups.

38.   At age 17, the defendant decided to move to the United States with his brother, Tony, in order to pursue opportunities beyond those they saw for themselves in China.  Mr. Leung and his brother moved in with an aunt who lived near Chicago.  The defendant quickly learned English as he finished the second half of his high school education in the United States.  Though the initial language barrier in the United States was difficult, Mr. Leung recalled his experience in Chicago as generally positive, and his aunt was kind and accommodating during his stay with her.

39.   In his early 20's the defendant and his brother relocated to the San Francisco Bay Area. In 1999, Mr. Leung married his wife, Innian Hung (age 43).  The defendant's wife works as a teaching assistant at Chinese Christian School in Alameda, California.  The two have two children together: Gabriel (age 16) and Mordecai (age 14).  Mr. Leung provided that he enjoys close relationships with his sons, though he has not told either about his pending case.  The defendant shared that he and his wife have a close, mutually supportive relationship, and she has helped him to deal with the pendency of his case.

40.   Outside of work and family obligations, Mr. Leung is involved in some volunteer work with his Church – Canyon Creek Presbyterian in San Ramon, California.  The defendant plays basketball in his free time.

41.   Though his father is relatively healthy for his age, Mr. Leung's mother is suffering from Kreutzfeld Jakob Disease ("Mad Cow Disease").  His mother's diagnosis has been very difficult for the family.  Mr. Leung shared that his mother was a very healthy and capable woman prior to being affected by a debilitating and deadly disease.  The defendant explained that his mother becomes confused and wanders out of the home.  It is necessary for his father or other family members to watch her at all times.  Mr. Leung provided that

it will not be long before the disease affects her mobility.  Sadly, the disease is terminal with no cure.

42.     The defendant currently resides with his wife, sons, and parents in Alamo, California.  A home inspection revealed a four-bedroom, three bathroom residence in a quiet neighborhood.  The home was nicely kept, adequately furnished, and contained two dogs (Great Swiss Mountain dogs), which were said to be friendly.  No safety concerns or indications of undisclosed wealth were noted.  Letters of support written by the Mr. Leung's wife, his pastor, and a close friend are enclosed for the Court's review.

## Physical Condition

43.     The defendant is a 48-year-old male born in China.  He stands 5'9" tall, weighs 190 pounds, and has brown eyes and black hair.  The defendant noted no scars or tattoos.  He suffered a broken middle finger (right hand) and cracked ribs (left side) while playing basketball in his 20's.  Mr. Leung noted no other health concerns and takes no medications.

## Mental and Emotional Health

44.     The defendant noted no history of mental or emotional health issues.  The presentence investigation uncovered no such issues.

## Substance Abuse

45.     The defendant previously drank alcohol on a very limited social basis, but he quit drinking altogether in the past year.  He noted no use of controlled substances not prescribed by a physician.

## Educational, Vocational and Special Skills

46.     The defendant indicated he graduated from Mundelein High School in Mundelein, Illinois in 1988.  He attended some courses at Trinity University in Deerfield Illinois, before obtaining a bachelor's degree in information technology from Golden Gate University in San Francisco in 1994 (degree provided as verification).  He has had an active real estate sales license since 1997 and a life insurance license since 2015.  Mr. Leung is fluent in both English and Chinese.

## Employment Record

47.     Since 2009, the defendant has been a partner at Principle Capital, LLC, a real estate investment/property management company.  He reported a 30% share in the company.  Mr. Leung advised he has recently become involved in personal financial planning with World Financial Group, which he intends to transition to in the near future.  The defendant intends to work as a financial planner into the future.

Re:  Leung, Dominic (40459)                                                        Page 9

### Financial Condition: Ability to Pay

48.    The information below was gained through financial paperwork completed by the defendant.  Mr. Leung is represented by retained counsel and agreed to pay restitution in the Plea Agreement.

#### Assets

| | | |
|---|---|---|
| Personal Checking Account | Wells Fargo Joint Checking | $5,000.00 |
| Personal Savings Account | Citibank Joint Savings | $23,000.00 |
| Personal Checking Account | Wells Fargo Business Checking | $12,000.00 |
| Stocks | Ameritrade Account | $3,500.00 |
| Vehicle | 2016 Toyota (equity) | $21,095.00 |
| Vehicle | 1984 Ferrari (equity) | $39,000.00 |
| Vehicle | 2016 BMW (equity) | $22,000.00 |
| Residence | 1488 Sunnybrook, Alamo (equity) | $300,000.00 |
| Residence | 4800 Westlake Parkway, Sacramento | $90,000.00 |
| Business | Total Value of Business Holdings | $900,000.00 |
| **Total Assets** | | **$1,415,595** |

#### Liabilities

| | | |
|---|---|---|
| Credit Card | Bank of the Orient Line of Credit | $450,000.00 |
| Credit Card | Wells Fargo Credit | $20,000.00 |
| **Total Liabilities** | | **$470,000** |
| **Total Net Worth** | | **$945,595** |

#### Monthly Income

| | | |
|---|---|---|
| Salary | | $7,000.00 |
| Other Income | Commissions | $3,000.00 |
| Rental Income | | $500.00 |
| Spouse Income | | $1,700.00 |
| Other Income | Additional Joint Business Income | $2,200.00 |

| | | |
|---|---|---|
| **Total Monthly Income** | | $14,400 |

**Monthly Expenses**

| | | |
|---|---|---|
| Home/Mortgage | | $2,500.00 |
| Groceries and Supplies | | $3,000.00 |
| Utilities | | $650.00 |
| Telephone | | $50.00 |
| Cable | | $100.00 |
| Other Expenses | Transportation | $400.00 |
| Auto Insurance | | $500.00 |
| Health Insurance | | $100.00 |
| Homeowner/Renter Insurance | | $100.00 |
| Life Insurance | | $2,500.00 |
| Clothing | | $300.00 |
| Credit Card Minimum Payments | | $1,000.00 |

| | | |
|---|---|---|
| **Total Monthly Expenses** | | $11,200 |

| | | |
|---|---|---|
| **Total Monthly Cash Flow** | | $3,200 |

**Analysis**

49.   Given the defendant's significant assets and positive monthly cash flow, it appears he has the ability to pay a fine in this case.

**PART D. SENTENCING OPTIONS**

50.   Pursuant to United States v. Booker, 125 S.Ct. 738 (2005), the Court should consider the following guideline provisions to be advisory.

**Custody**

51.   **Statutory Provisions:** The maximum term of imprisonment on Count 1 is 10 years. 15 U.S.C. § 1. This offense is a Class C felony. 18 U.S.C. § 3559(a)(3).

52.   **Guideline Provisions:** Based upon a total offense level of 13 and a criminal history category of I, the guideline imprisonment range is 12 months to 18 months. Since the applicable guideline range is in Zone C of the Sentencing Table, the minimum term may

be satisfied by (1) a sentence of imprisonment; or (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one-half of the minimum term is satisfied by imprisonment. USSG §5C1.1(d).

## Supervised Release

53.   **Statutory Provisions:** The Court may impose a term of supervised release of not more than three years on Count 1. 18 U.S.C. § 3583(b)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

54.   **Guideline Provisions:** Since the offense for Count 1 is a Class C Felony, the guideline range for a term of supervised release is 1 year to 3 years. USSG §5D1.2(a)(2). The court shall order, as an explicit condition of supervised release, that the defendant not commit another Federal, State or local crime during the term of supervision and that the defendant not unlawfully possess a controlled substance. The court shall also order, as an explicit condition of supervised release, that the defendant refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release to supervision and 2 periodic drug tests thereafter for use of a controlled substance, pursuant to United States v. Antonio D. Stephens, 424 F. 3d 876 (9th Cir. 2005). The court shall order as an explicit condition of supervised release, that the defendant cooperate in the collection of a DNA sample from the defendant, if the collection of such sample is authorized pursuant to the revised DNA collection requirements under the Justice for All Act of 2004. The court may further order any other condition it deems appropriate. 18 U.S.C. § 3583(d).

## Probation

55.   **Statutory Provisions:**  The defendant is eligible for not less than one nor more than five years probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. 18 USC § 3563(a)(2).

56.   **Guideline Provisions:** Since the applicable guideline range is in Zone C of the Sentencing Table, the defendant is ineligible for probation. USSG §5B1.1, comment.(n.2).

### Fines

57.   **Statutory Provisions:**  The maximum fine is $1,000,000. 18 U.S.C. § 3571(b).

58.   A special assessment of $100 is mandatory. 18 U.S.C. § 3013.

59.   **Guideline Provisions:** Under USSG §2R1.1(c)(1), the guideline fine range shall be from one to five percent of the volume of commerce, but not less than $20,000. For defendant Leung, this corresponds to a fine range of $20,700 to $103,500.

60.   Costs of prosecution shall be imposed on the defendant as required by statute. USSG 5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG 5E1.2(d)(7) and 18 U.S.C. 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 24, 2016, provides the following monthly cost data:

|  | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer |
|---|---|---|---|
| Daily | $88.00 | $71.00 | $11.00 |
| Monthly | $2,665.00 | $2,174.00 | $341.00 |
| Annually | $31,976.00 | $26,083.00 | $4,097.00 |

### Restitution

61.   **Statutory Provisions:** The Mandatory Victim Restitution Act 18 U.S.C. § 3663A, does not apply to violations of 15 U.S.C. § 1. However, restitution is required in this case because the parties have agreed to it under U.S.S.G. §5E1.1(a), which is permitted under 18 U.S.C. § 3663(a)(3).  As such, restitution of $45,428.50 is due to the victims in this case.

62.   **Guideline Provisions:** Restitution may be ordered in this case. USSG §5E1.1.

### Forfeiture

63.   **Statutory Provisions:** Forfeiture is not an issue.

64.   **Guideline Provisions:** Forfeiture is not an issue.

### Denial of Federal Benefits

65.   **Statutory Provisions:** None.

66.   **Guideline Provisions:** None.

Re:  Leung, Dominic (40459)                                                                                    Page 13

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

67.     The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE
ADVISORY GUIDELINE SYSTEM**

68.     Presentation of information in this section does not necessarily constitute a recommendation by the probation officer for a sentence outside the applicable advisory guideline range.

69.     In sentencing the defendant, the Court may wish to consider that the defendant is a 48-year-old man with no prior criminal history, who is unlikely to reoffend.  He has been compliant over the more than five-year period of pretrial release.  These issues are relevant to 18 U.S.C. § 3553(a)(1) – "the history and characteristics of the defendant."

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Brian D. Casai
        U.S. Probation Officer

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer

## ADDENDUM TO THE PRESENCE REPORT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## UNITED STATES V. DOMINIC LEUNG, DKT. 0971 4:12CR00083-001 PJH

The United States Probation Officer certifies that the presentence investigation report, including any revisions thereof and this addendum, has been disclosed to the defendant's counsel for discussion with the defendant, and to counsel for the Government, pursuant to Crim. L.R. 32-5 and FRCrimP 32(g).

### OBJECTIONS

### By the Government

1.  A written response has been received from the Government, which is in compliance with Crim. L.R. 32-4(b) and (c). All objections to the presentence report have been resolved.

### By the Defendant

2.  A written response has been received from the defense counsel, which is in compliance with Crim. L.R. 32-4(b) and (c). All objections to the presentence report have been resolved.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Brian D. Casai
     U.S. Probation Officer

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer

**CONFIDENTIAL RESTRICTED**
**SENTENCING RECOMMENDATION**

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**UNITED STATES V. DOMINIC LEUNG, DKT. 4:12CR00083-1 PJH**

**TOTAL OFFENSE LEVEL**                                    13
**CRIMINAL HISTORY CATEGORY**                          I

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | 10 years | 12 to 18 months | 9 months (variance) |
| **SUPERVISED RELEASE:** | 3 years | 1 to 3 years | 3 years |
| **PROBATION:** | 1 to 5 years | Ineligible | Not recommended |
| **FINE:** | $1,000,000 | $20,700 to $103,500 | $7,500 |
| **RESTITUTION:** | $45,428.50 | $45,428.50 | $45,428.50 |
| **SPECIAL ASSESSMENT:** | $100 | $100 | $100 |

**Justification:**

Dominic Leung is before the Court after pleading guilty to one count of Bid Rigging (15 U.S.C. § 1). The defendant and others agreed not to compete to purchase selected properties at public auctions; designated which conspirators would win selected properties at public auctions; refrained from and stopping bidding for selected properties at public auctions; purchased selected properties at public auctions at artificially suppressed prices; negotiated, made, and received payoffs for agreeing not to compete with co-conspirators; and held second, private auctions, known as "rounds," to determine the payoff amounts and the conspirators who would be awarded the selected properties. The defendant purchased properties and took payoffs to refrain from bidding related to properties involved in the conspiracy.

In determining the particular sentence to recommend, the U.S. Probation Officer considered the factors set forth in 18 U.S.C. § 3553(a), which include the nature and circumstances of the offense and the history and characteristics of the defendant. Additionally, the Court must

consider whether the sentence reflects the seriousness of the offense; whether the punishment affords adequate deterrence to criminal conduct; whether the sentence protects the public from future crimes of the defendant; and whether the sentence provides the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The defendant is a 48-year-old man.  He has no prior criminal history.  Mr. Leung has remained in compliance over a period of more than five years of pretrial release.

The defendant reported a stable childhood.  He comes from a stable and caring family from China, and grew up well supported by his parents.  Mr. Leung completed the second half of high school in the United States, as he struggled to learn English.  Mr. Leung subsequently obtained a bachelor's degree.  The defendant has been gainfully employed for several years prior to his involvement in the instant offense, and he has maintained gainful employment while on pretrial release.  He married his wife in 1999, and they have two sons, both of whom are currently in high school.  The defendant spends much of his free time helping to care for his mother, who resides with him and suffers from a terminal illness.  Mr. Leung has expressed remorse for his offense.  He hopes to move forward with a law abiding and productive life, and to continue to care for his family.

With regard to the facts of this case, and the defendant's history as noted above ("the history and characteristics of the defendant" as relevant to 18 U.S.C. § 3553(a)(1)), the probation officer considered the defendant's unlikelihood of recidivism, his success over a lengthy period of pretrial release, and his commitment to his family (including caring for his ailing mother) to be mitigating factors.  As such, the probation officer believes that a sentence below the low end of the guideline range for imprisonment is appropriate in this case.  Therefore, the probation officer recommends a sentence of 9 months in the custody of the Bureau of Prison.  It is noted that, as is standard practice for the probation office, this recommendation is made without consideration of the defendant's cooperation with the government in this case.  Given a potential motion for departure pursuant to USSG §5K1.1, a lesser sentence may be appropriate.  A term of three years of supervised release will aid the defendant in reintegrating into the community with the support and supervision of the probation officer.

A condition requiring the defendant to comply with the collection of DNA is mandatory.  In view of the offense, to ensure his income is from legitimate sources, and his outstanding financial obligations, he should provide the probation officer with any requested financial information.  Mr. Leung will be required to pay the mandatory special assessment of $100 and $45,428.50 in restitution.

**<u>Voluntary Surrender:</u>**

It appears the defendant is a person whose release is not restricted under 18 U.S.C. §3143. The defendant has kept all court appearances, complied with conditions of pretrial release, and is not viewed as a flight risk or a danger to the community.  Therefore, the defendant is considered to be a good candidate for voluntary surrender.

Re:  Leung, Dominic (40459)                                                                                Page 3

## Recommendation

It is respectfully recommended that sentence in this case be imposed as follows:

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that Dominic Leung is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 9 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years. Within 72 hours of release from the custody of the Bureau of Prisons, the defendant shall report in person to the probation office in the district to which the defendant is released.

While on supervised release, the defendant shall not commit another Federal, State or local crime, shall comply with the standard conditions that have been adopted by this court, except that the Mandatory Drug Testing Provision is suspended, and shall comply with the following additional conditions:

## Recommendation

1.     You shall pay any restitution, fine and special assessment that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

2.     You shall provide the probation officer with access to any financial information, including tax returns, and shall authorize the probation officer to conduct credit checks and obtain copies of income tax returns.

3.     You shall cooperate in the collection of DNA as directed by the probation officer.

It is further ordered that the defendant shall pay to the United States a special assessment of $100. Payments shall be made to the Clerk of U.S. District Court, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.  During imprisonment, payment of criminal monetary penalties are due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.

It is further ordered that the defendant shall pay to the United States a fine in the amount of $7,500. During imprisonment, payment of the fine is due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program.  Once the defendant is on supervised release, the fine must be paid in monthly payments of not less than $500 or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. Any established payment plan does not preclude enforcement efforts by the US Attorney's Office if the defendant has the ability to pay more than the minimum due. Fine payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.

It is further ordered that the defendant shall pay restitution totaling $45,428.50 to the following victims in the following amounts: (See attached spreadsheet).

Re:  Leung, Dominic (40459)                                                                 Page 4

During imprisonment, payment of the restitution is due at the rate of not less than $25 per quarter and payment shall be through the Bureau of Prisons Inmate Financial Responsibility Program. Once the defendant is on supervised release, restitution must be paid in monthly payments of not less than $500 or at least 10 percent of earnings, whichever is greater, to commence no later than 60 days from placement on supervision. Any established payment plan does not preclude enforcement efforts by the US Attorney's Office if the defendant has the ability to pay more than the minimum due. The restitution payments shall be made to the Clerk of U.S. District Court, Attention: Financial Unit, 450 Golden Gate Ave., Box 36060, San Francisco, CA 94102.

Respectfully Submitted,

Yador J. Harrell
Chief U.S. Probation Officer

By:  Brian D. Casai
          U.S. Probation Officer

Approved:

Joshua D. Sparks
Supervisory U.S. Probation Officer