MICHAEL RABKIN (ILRN 6293597)
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, CA 94102
michael.rabkin@usdoj.gov
Telephone: (415) 934-5300

Attorney for the United States

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>DOMINIC LEUNG,<br><br>                    Defendant. | Case No. CR 12-00083 PJH<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. §5K1.1**<br><br>Date: December 15, 2017<br>Time: 9:00 a.m.<br>Court: Hon. Chief Judge Phyllis J. Hamilton |

The United States respectfully requests that this Court sentence defendant Dominic Leung to (1) serve eight months of custody, based on the government's motion for a downward departure of 35% from the low end of the applicable Guidelines range for substantial assistance; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, restitution in the amount of $45,429, and a $100 special assessment. This sentence is consistent with the parties' Fed. R. Crim. P. 11(c)(1)(A) and (B) plea agreement.

## BACKGROUND

Defendant Dominic Leung is a real-estate investor who participated in the bid-rigging conspiracy at the Contra Costa County foreclosure auctions beginning as early as May 2009 and

continuing until in or about January 2011.  Dkt. 38 (Plea Agreement), ¶ 2.  As a member of the conspiracy, Leung reached agreements with competitors to refrain from bidding at the public auctions on selected properties and participated in the rounds.

Leung initially started buying properties at trustee sales in approximately 1995 while working for Wilson Young as an employee of Young's company, JWI Corporation.  Presentence Report ("PSR") ¶ 9.  Leung worked for Young until 2007, when Leung began selling jewelry on the internet.  *Id.*  In 2009, Leung returned to the trustee sales, this time working for himself and using money from a family friend to buy properties.  *Id.*

By July or August 2009, Leung decided that he needed help with his business and invited Hilton Wong[1] to work with him.  *Id.* ¶10.  At the start of Wong's employment, Leung explained everything about the trustee sales to Wong.  *Id.*  Wong attended both the auctions and the rounds as a representative of Leung.  *Id.*  Leung and Wong often attended the auctions and rounds together but, at times, Leung attended them without Wong or Wong attended them without Leung and communicated with Leung by telephone.  *Id.*

Leung participated in rounds (either by himself or through Wong, acting as his representative, or both) on approximately 100 properties, of which he purchased approximately 25 rigged properties.  *Id.* ¶ 11.  The parties have agreed that the affected volume of commerce is $2.07 million.  *Id.*  The plea agreement obligates Leung to pay $45,429 in restitution, which corresponds to a portion of the payoffs that he received through the conspiracy.  *Id.*

Leung was initially interviewed by the FBI on January 11, 2011.  During that interview, he stated that he had never participated in any rounds, pay-off schemes, or non-competition agreements, and had no knowledge of such activities relating to foreclosure auctions.  *Id.* ¶ 12.  In March 2012, Leung agreed to plead guilty and cooperate with the government.  *Id.*  Leung met with the FBI again in April 2012 and admitted to his participation in rounds and payoffs.  *Id.*  Leung also met with the FBI for another interview later in April 2012.  *Id.*

Defendant was charged by Information in February 2012 with one count of bid rigging

---

[1] In a related case, Hilton Wong was sentenced to three years of probation, including home confinement with electronic location monitoring for a period of eight months.  *See United States v. Hilton Wong*, No. CR 12-00082 PJH, Dkt. 50 (Sept. 6, 2017).

(15 U.S.C. § 1) and one count of conspiracy to commit mail fraud (18 U.S.C. § 1349), and pleaded guilty to both counts in March 2012. Dkt. 1, 11, 12. Those pleas were later withdrawn by stipulation, and in October 2016, defendant pleaded guilty to the bid-rigging charge only, pursuant to a revised plea agreement, and the fraud count was dismissed on the government's motion. Dkt. 36, 37, 38.

## ARGUMENT

### A. Sentencing Guidelines Calculations

#### 1. Criminal History

In Paragraph 12 of the Plea Agreement, the parties agree that defendant's Criminal History Category is determined by the Court. The PSR calculates defendant's Criminal History Category as I, based on the lack of any prior criminal history, and the United States agrees. PSR ¶ 31.

#### 2. Offense Level

The PSR calculates the total offense level as 13, consistent with the plea agreement. *Id.* ¶ 26. This calculation includes a one-level increase to the base offense level of 12 for conduct involving the submission of non-competitive bids, a two-level increase for a volume of commerce exceeding $1 million, and a downward adjustment of two levels for acceptance of responsibility. U.S. Sentencing Guidelines Manual ("U.S.S.G.") §§2R1.1(a)-(b), 3E1.1 (U.S. Sentencing Comm'n 2010).

Under the Sentencing Guidelines, an offense level of 13 for a defendant in Criminal History Category I results in a sentence ranging from 12 to 18 months (Zone C).

#### 3. Fine and Restitution

The PSR calculates a fine range of $20,700 to $103,500, consistent with the plea agreement. PSR ¶ 59; U.S.S.G. §2R1.1(c)(1) (fine range shall be from one to five percent of the volume of commerce, but not less than $20,000). In Paragraph 9 of the plea agreement, the government agrees to recommend a fine between $7,500 and $75,000. (This fine range was initially agreed to by the parties in the original plea agreement, based on the application of the fraud Guidelines, and was carried over to the revised plea agreement.)

As for restitution, while the Mandatory Victim Restitution Act, 18 U.S.C. § 3663, does not apply to this case, restitution is permitted under 18 U.S.C. § 3583(d) (restitution as discretionary condition of supervised release). In Paragraph 11 of the plea agreement, the parties agreed to recommend that the Court order defendant to pay restitution in the amount of $45,429.

**B.      Basis for Downward Departure for Substantial Assistance**

The government moves, pursuant to Section 5K1.1 of the Guidelines, for a downward departure for substantial assistance to the investigation under the Rule 11(c)(1)(B) plea agreement in this case. The government recommends a 35% reduction from the low end of the Guidelines range of twelve months, resulting in a sentence of approximately eight months.

This reduction is based in large part on the timing of defendant's plea. After the investigation went public in 2011, defendant was among the earliest to agree to plead guilty and cooperate in the government's investigation, and thus likely influenced many other of his coconspirators to plead guilty as well. The government's recommendation is also based on the extent and value of the information provided by defendant. After he was initially interviewed by the FBI in January 2011, defendant sat for two debrief interviews with the government, during which he described a number of rounds and payoffs that he had participated in and explained certain records relating to those rounds and payoffs. These interviews were useful to the government for their corroborative value, especially because they occurred early in the investigation. However, defendant did not testify in any of the subsequent trials. Based on the foregoing, a thirty-five percent reduction for substantial assistance is appropriate.

**C.      Sentencing Recommendation**

The government's recommendation of an eight-month sentence is reasonable and not greater than necessary in light of the factors articulated in 18 U.S.C. § 3553. Defendant's sentence should reflect the seriousness of the offense, promote respect for the law, and afford adequate deterrence to future bid-rigging offenses and white-collar crime generally, as the government has argued in the related cases.

Defendant profited directly from the approximately 100 rigged auctions that he participated in, both by receiving more than $45,000 in payoffs and by being able to buy over

U.S.' SENT'G MEMO.                                    4
No. CR 12-00083 PJH

$2 million worth of properties at discounted prices through suppressed bidding at the public auctions. Given the magnitude of the financial harm caused by defendant's conduct, the government's recommendation, which includes a custodial term, is appropriate and consistent with the commentary in the applicable Guidelines.

The government recognizes, however, that defendant has expressed remorse for his role in the offense, chose to cooperate with the government's investigation, is a first-time offender, and has agreed to pay restitution. While the government is recommending custody here, as it has in all the related cases, these factors have led this Court to impose probationary sentences for similarly-situated defendants.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court sentence defendant Dominic Leung to (1) serve an eight-month custodial sentence; (2) serve three years of supervised release; and (3) pay a criminal fine of $7,500, restitution in the amount of $45,429, and a $100 special assessment.

Dated: December 8, 2017                    Respectfully submitted,

                                           /s/ MICHAEL RABKIN
                                           United States Department of Justice
                                           Antitrust Division